[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11244
Non-Argument Calendar

_____

D. C. Docket No. 07-00023-CR-1-SPM-AK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES EDWARD DEERING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 20, 2008)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Charles Edward Deering appeals his conviction on one count of possession

of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After review, we affirm.

## I. BACKGROUND

### A. Application for Search Warrant

After receiving information from a confidential source ("CS"), special agent Victor D. Washington started an investigation into the unlawful possession of firearms by Deering, a convicted felon.[1] As part of the investigation, Agent Washington spoke with the CS on "several occasions" between April 2, 2007, and April 30, 2007.

The CS told Agent Washington she had observed firearms and ammunition inside Deering's residence on several occasions during the prior three months and as late as February 15. The CS described one firearm as a rifle with a brown wooden stock and a dark colored barrel. The CS stated that this rifle was kept against a wall by the front door and that Deering described the rifle as a "'.22 caliber rifle.'" The CS saw a second firearm on the couch in the living room, which the CS described as a "'stainless steel,'" bottom-loading firearm "'with a black handle.'" The CS stated that Deering described this firearm as a "'Russian .380 caliber pistol.'" The CS observed a third firearm in the bedroom that had a

---

[1]The CS requested anonymity based on fear of reprisal or injury. The record contains Agent Washington's detailed affidavit of what occurred.

brown wooden stock and a gray barrel that had been cut down to approximately eight or ten inches in length. Deering described this firearm to the CS as a "'rifle.'" From a firearms manual procured by Agent Washington, the CS subsequently identified two firearms as firearms similar to the ones the CS saw in Deering's residence.

The CS also observed several boxes containing various sizes of ammunition inside Deering's residence. The CS heard Deering target shooting at the residence and saw shell casings in the front and back yards. The CS described the premises as large enough to target shoot without disturbing, or being seen by, neighbors.

The CS provided Agent Washington with this information: (1) Deering's birthdate, Social Security number, physical description, address and telephone number; (2) his wife's name and description; and (3) a description of his residence, his dog (including the dog's name), and his vehicles. The CS told Agent Washington that Deering: (1) had a prior conviction for aggravated battery; (2) had been arrested for battery, kidnaping, and possession of marijuana; (3) had physically abused his wife; (4) claimed he had served in the Army and been employed as a deputy with the Levy County Sheriff's office; and (5) had his driver's license revoked.

Another law enforcement officer informed Agent Washington that

3

information matching Deering's date of birth, general description, and address indicated Deering had an expired driver's license, as well as two vehicles and a motorcycle registered in his name. In investigating the information provided by the CS, Agent Washington learned Deering: (1) had been arrested for, inter alia, battery, kidnaping, possession of marijuana, and battery domestic violence; (2) had worked as a deputy with the Levy County Sheriff's Office; (3) had domestic problems with his wife, Patricia S. Deering; (4) had been arrested for domestic violence, violation of a no-contact order, and violation of probation, and adjudicated guilty of aggravated battery; (5) had been convicted of aggravated battery with a deadly weapon; (6) worked for two years as a military police officer in the army; (7) was wanted for failure to pay child support; (8) subscribed to the same telephone number as the one provided by the CS; and (9) had not had his right to possess firearms restored.

On April 17, 2007, Agent Washington met with the CS, and the CS identified Deering from a print-out of his driver's license. The CS directed Agent Washington to Deering's residence and identified Deering's dog, "'Tank.'" Taken together, the information gathered confirmed much of what the CS provided to Agent Washington. Consequently, Agent Washington concluded that there was probable cause to believe Deering had firearms and ammunition in his residence.

4

On May 10, 2007, Agent Washington prepared an application for a search warrant to search Deering's home and attached an affidavit detailing the information gathered. In addition, Agent Washington averred that he had participated in the execution of numerous search warrants for firearms violations and that, in his experience, people who own firearms, including convicted felons, commonly store firearms and ammunition in their residences. Based on this information, a search warrant was issued and executed the same day. The search resulted in the seizure of three firearms and multiple rounds of ammunition from Deering's residence.

### B. Motion to Suppress

A federal grand jury indicted Deering on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Deering filed a motion to suppress the evidence seized from his home pursuant to the search warrant. Deering's motion alleged that: (1) the application contained no information indicating that weapons would be located in his residence; (2) the application contained no information as to the bias of the CS or any indication that law enforcement had used the CS before or that the CS was trustworthy; and (3) the CS's information was stale because law enforcement last had contact with the

5

CS twenty-one days before the search warrant was executed.[2]  Based on these allegations, Deering's motion argued there was no nexus between the firearms and the residence, and thus no probable cause existed to support the search warrant.

The district court denied Deering's motion.  The district court found a sufficient nexus between the firearms and the residence because the CS observed the firearms and ammunition at the residence and Agent Washington indicated that, based on his experience and knowledge, most people store firearms in their home.  With regard to the veracity and reliability of the CS, the district court indicated that, under the totality-of-the-circumstances analysis, the magistrate judge's finding of probable cause was entirely reasonable.  As to the staleness issue, the district court concluded that the information was not stale because the nature of firearm possession is such that it is usually ongoing.

Deering filed a motion for reconsideration, contending that the district court misinterpreted his suppression argument.  Deering's motion argued that the staleness argument was not about the twenty-one days since last contact, but the eighty-five-day time lapse between the date the firearms were seen last by the CS in the residence and the date the warrant was executed.  The court denied Deering's

---

[2]Deering's motion to suppress alleged the "last contact" law enforcement had with the CS was on April 17, 2007, which was twenty-one days before the search warrant was executed.  The affidavit, however, indicates that Agent Washington "spoke" to the CS as late as April 30, 2007.

motion for reconsideration. The district court acknowledged it had made an error in its factual summary.[3] However, the district court concluded the eighty-five-day time lapse did not render the information too stale to support a finding of probable cause because of the "type of items that were being searched for, the corroboration of the source's information by law enforcement, and the number of firearms that the source had seen in the residence."

### C. Guilty Plea and Sentencing

Deering pled guilty pursuant to a written plea agreement that reserved Deering's right to appeal any pretrial rulings. During the plea hearing it was revealed the CS was Deering's wife who had left Deering because they could not get along anymore.

At sentencing, Deering's counsel revealed that Deering's marriage had been legally dissolved after the presentence investigation report had been prepared and Deering's ex-wife had been awarded the land and mobile home. The court sentenced Deering to sixty-five months' imprisonment. Deering appealed.

## II. DISCUSSION

### A.    Timeliness of Information in Warrant Application

---

[3]The district court had stated in the order denying the motion to suppress that the defendant "argues that the 21-day lapse in time between the last date on which the source saw firearms in the Defendant's house and the date that the warrant was executed rendered the information stale."

7

On appeal, Deering argues that the district court should have granted his motion to suppress because the search warrant application was based on stale information.[4]

To show probable cause, the government's application for a search warrant must be timely, that is it "must reveal facts that make it likely that the items being sought are in that place when the warrant issues." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) (quotation marks omitted). "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." Id. To evaluate staleness claims, we look at the unique facts of each case and may consider "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id. "There is no particular rule or time limit for when information becomes stale." United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000).

Here, the information contained in Agent Washington's affidavit was not too stale to provide probable cause. First, the CS's information indicated Deering's

---

[4]"In reviewing a district court's ruling on a motion to suppress, we review findings of fact for clear error and the application of the law to those facts de novo." United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006). We "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quotation marks omitted).

firearm possession was ongoing. Specifically, the affidavit stated that the CS had observed firearms and ammunition at Deering's residence "several times" within a three-month period, that there were three different guns in different locations of the house, and that the CS had heard Deering engage in target practice and seen shells scattered in the front and back yards. These facts support a finding that Deering's firearm possession was for his personal use and was ongoing. See United States v. Haimowitz, 706 F.2d 1549, 1555 (11th Cir. 1983) ("[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.") (quotation marks omitted).

Second, the nature of the evidence sought made the eighty-five-day time lapse less significant. Agent Washington averred in his affidavit that people who own firearms and ammunition commonly store those items in their homes. Furthermore, as the district court noted, common sense suggests that firearms, unlike drugs, are generally not items that are dispersed quickly, particularly when multiple firearms are possessed in the residence for personal use.

These circumstances, taken together, make it more likely than not that the firearms sought were still in Deering's residence. Accordingly, we conclude that the district court did not err in finding that the eighty-five-day time lapse – from the last date the CS witnessed the firearms in Deering's residence to the date the

9

warrant was issued – did not render the information too stale to support probable cause.

## B. Probable Cause for Search Warrant

Whether an affidavit is sufficient to establish probable cause is subject to a "totality-of-the-circumstances analysis." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. The reviewing court's task is to ensure the magistrate judge had a "substantial basis" for finding probable cause. Id. at 238-39, 103 S. Ct. at 2332. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Id. at 236, 103 S. Ct. at 2331 (quotation marks omitted).

Here, a sufficient basis for finding probable cause existed. The CS showed a detailed knowledge of the wrongdoing; described in detail the various firearms, the ammunition, and its packaging; described the locations of the firearms and ammunition; and indicated that she personally observed the firearms and ammunition in the residence on several occasions.

10

Deering argues the affidavit failed to provide a sufficient basis to find probable cause because the affidavit provided no basis to measure the CS's veracity and reliability. Furthermore, he argues the affidavit only corroborated innocent information provided by the CS. However, to have a substantial basis for making a probable cause determination, the police do not need to corroborate the criminal activity. A finding of probable cause "requires only a probability . . . of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13. Moreover, the corroboration of innocent activity may serve to bolster veracity under the totality-of-the-circumstances analysis because when "an informant is right about some things, [she] is more probably right about other facts." Id. at 244, 103 S. Ct. at 2335 (quotation marks omitted). This is especially true where, as here, the CS's information is of a character likely obtained only from the defendant or from someone intimately familiar with his information. In such cases, "a magistrate could properly conclude that it was not unlikely that [the CS] also had access to reliable information of the [defendant's] alleged illegal activities." Id. at 245, 103 S. Ct. at 2336.

Thus, Agent Washington's inability to corroborate criminal activity prior to the application for the search warrant does not preclude a finding of probable cause. In issuing the search warrant, the magistrate judge was called upon to make

11

a practical, common-sense judgment regarding probable cause. Based on the record, we conclude that a substantial basis existed for probable cause because the CS demonstrated detailed knowledge and Agent Washington corroborated a significant amount of innocent information, some of which could have been obtained only by someone close to Deering. Therefore, the district court properly determined the search warrant issued by the magistrate judge was supported by probable cause.

### C. Failure to Disclose CS's Identity

Finally, Deering challenges the probable cause finding on the basis that law enforcement should have disclosed that the CS was Deering's estranged wife. "To justify suppression of evidence seized under a warrant, the alleged deliberate or reckless failure to include material information in the affidavit must conceal information that would defeat probable cause." United States v. Steiger, 318 F.3d 1039, 1046 (11th Cir. 2003); see also United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990) (noting that insignificant or immaterial omissions will not invalidate a warrant).

Here, Deering has not shown that the inclusion of the CS's identity would have defeated the probable cause finding. Even if the CS's identity had been disclosed, the affidavit still would contain enough facts to allow the magistrate

12

judge to conclude reasonably that Deering likely possessed firearms at his residence. Furthermore, contrary to Deering's argument, the disclosure of the CS's identity, if anything, would have strengthened the government's application for the search warrant because the magistrate judge was free to infer that a spouse has intimate knowledge of the other spouse's activities and would not lie about the spouse's illegal activities. See United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006) ("[C]ourts have traditionally viewed information drawn from an ordinary witness or crime victim with considerably less skepticism than information derived from anonymous sources."). Finally, given the level of detail in the information the CS provided, the issuing magistrate judge could have inferred that the CS was someone with close ties to Deering but was not on good terms with him. Therefore, there is nothing in the record that indicates the disclosure of the CS's identity would have altered the outcome of the probable cause analysis. See Gates 462 U.S. at 234, 103 S. Ct. at 2330 ("[E]ven if we entertain some doubt as to an informant's motive, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the informant's] tip to greater weight than might otherwise be the case.").

**AFFIRMED.**

13